CONNER, J.,
dissenting.
The majority agrees with petitioner that Youngblood v. Michaud, 593 So.2d 568 (Fla. 4th DCA 1992), controls the disposition of petition. I disagree and respectfully dissent for the reasons discussed below.
First, Youngblood consists of one relatively short substantive paragraph, with very little discussion of the facts and legal analysis. As pointed out in our subsequent opinion in McKenney v. Airport Rent-A-Car, 686 So.2d 771, 772 (Fla. 4th DCA), Youngblood seemingly premised its reversal by comparing a requirement that a defendant travel outside the county of his residence for a medical examination to a requirement that a defendant travel outside the county of his residence for a deposition. Youngblood, 593 So.2d at 569. In McKenney, we clearly rejected the argument “that Youngblood established a hard and fast rule regarding the location of an independent medical examination.” McKenney, 686 So.2d at 772. We also noted that the Florida rule on compulsory examinations is patterned after the federal rule, and the federal rule has been interpreted to give the court the discretion to determine the location of the examination to facilitate the presentation of evidence. Id. We concluded certiorari relief was inappropriate because the trial court did not abuse its discretion in requiring the plaintiff to' travel from his home county for a medical examination in the county where the suit was pending. Id. at 773.
The majority opinion in this case holds that a trial court departs from the essential requirements of law when it orders a non-resident defendant to travel to Florida for a medical examination. The premise of the position is that a defendant should not be required to travel to Florida unless the defendant seeks affirmative relief. In support of the premise, the majority cites to Youngblood. The majority then asserts *610 that McKenney stands for the proposition that a plaintiff can be required to travel beyond the county of residence because the plaintiff is seeking affirmative relief. Next, the majority contends “the gravamen of the cause of action in this case— investment fraud — has nothing to do with the defendant’s [petitioner’s] condition.” For those reasons, the majority concludes Youngblood is on point and McKenney is not.
I respectfully disagree with the majority. Florida Rule of Civil Procedure 1.360 does not limit its application to a party seeking affirmative relief. Instead, the rule allows for the examination of a party “when the condition that is the subject of the requested examination is in controversy.” Fla. R. Civ. Proc. 1.360(a)(1) (emphasis added).[1] I disagree that the rule works differently depending on whether it is a plaintiff or defendant being examined. I have found no case law in Florida that holds the rule works differently, depending on which party is being examined.[2]
My research has revealed there are very few cases in Florida, or nationally, that address the issue of the trial court’s discretion in determining the place of a medical examination of a defendant pursuant to statutes or procedural rules in civil cases when it is the defendant putting his or her medical status in controversy.[3] In fact, Youngblood is the only case in Florida addressing the propriety of the place for a medical examination of a defendant in a civil proceeding. The lack of civil cases addressing the medical examination of a defendant is not surprising, since it is not typical for a defendant to raise a defense which makes an issue of his or her physical or mental status. It is even less typical for a defendant to assert his mental status as a defensive move to block or erode the evidentiary value of his prior testimony, which is the situation in this case. However, it is clear that it is the defendant who has put his mental status at issue in this case. It is debatable, given the procedural maneuverings by the defense in this case, whether the defendant is using his mental status as a sword, shield, or both.[4]
' Of all the districts, the Fifth District has issued the most opinions regarding a trial court’s discretion in determining the place for a medical examination. All of the cases address a medical examination of the plaintiff. Although some of the caselaw in the Fifth District has mentioned that the plaintiff has sought affirmative relief by bringing the action, which is pertinent to the issue of the place for depositions, the Fifth District has squarely said “[d]eposi- *611 tions and [medical examinations] are simply not the same” and “[w]hat the courts have held to be a reasonable place in the context of medical exams is not necessarily the same as for depositions.” Tsutras v. Duke, 685 So.2d 979, 980-81 (Fla. 5th DCA 1997). In Tsutras, the court addressed the issue of the proper place for a medical examination when the plaintiff resides outside of Florida. Id. at 980. The court said, generally speaking:
If the defendant desires a medical examination it must be done in the resident county or state of the plaintiff, or any other place where she may be found and by a doctor of defendant’s choice.
Id. at 981. However, the court went on to observe that “[ojbviously, the availability of the appropriate medical speciality will influence the extent to which the nonresident plaintiff may be accommodated.” Id. The court then noted a Tennessee opinion which “found that it was not an abuse of discretion for the trial court to require a [medical examination] of a nonresident plaintiff if the exam was to be performed ‘while she was to be in Memphis for her discovery deposition.’ ” Id. (citing Kibbler v. Richards Med. Co., 1992 WL 283027 (Tenn.App. Sept. 23, 1992)).[5]
More recently, the Fifth District has upheld a trial court order requiring a nonresident plaintiff to attend a medical examination in Florida, at the plaintiffs expense, because the plaintiff had not been “forthcoming” in answering questions in his first deposition, taken in Florida, thus prompting the need for a second deposition. Goeddel v. Davis, 993 So.2d 99, 100 (Fla. 5th DCA 2008). The Fifth District found no error in requiring the plaintiff to attend a medical examination in Florida while here for the second deposition, again citing Kibbler. Id.
In this case, there is no transcript of the pre-trial calendar call hearing which resulted in the order under review.[6] The respondents, two days prior to the calendar call, filed a motion to compel the petitioner’s appearance at the hearing, scheduled by the petitioner, to determine his competency to testify. The trial was scheduled to occur approximately two months after the calendar call. In addition to seeking an order compelling petitioner’s attendance at the hearing, respondents sought an order compelling a medical examination of petitioner while in Florida to attend the hearing on his competency to testify. Although petitioner contends in his petition before this court that the trial court ordered him to attend the hearing to determine his competence to testify, the written order under review does not so state.[7] However, if the trial court was satisfied at the calendar call that the petitioner would be attending the evidentiary hearing on his motion to determine competence to testify, even voluntarily, I conclude the trial court did not abuse its discretion, given the procedural defensive maneuvers by petitioner, in requiring petitioner to submit to a medical examination while in Florida. Like the *612 Fifth District, I ■ agree the trial court should have the discretion to follow the reasoning of Kibbler, particularly when that will facilitate the presentation of evidence.

. The United States Supreme Court, in construing Rule 35, upon which rule 1.360 was patterned, has stated "Rule 35 on its face applies to all 'parties,' which under any normal reading would include a defendant.” Schlagenhauf v. Holder, 379 U.S. 104, 112, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

. The Second District seemingly agrees the rule does not work differently depending on which party is being examined. In State Farm Mutual Automobile Insurance Co. v. Shepard, 644 So.2d 111 (Fla. 2d DCA 1994), the court stated the trial court did not err in requiring the plaintiff to be examined in the county of her residence, citing Youngblood.

. In cases in which the plaintiff puts the defendant’s medical condition in controversy, one can surmise that there is an assumption the examination must be conducted in the county where the defendant resides, and the parties agree to the place of the examination without a fight and thus no appellate issue is created.

. Early on in this case, an order was entered pursuant to Florida Rule of Judicial Administration 2.545(c) to give this case priority status in the trial court due to the advanced ages of both plaintiffs (respondents). One of the elderly plaintiffs has since died. At the time suit was filed, both plaintiffs were older than the petitioner.

. The dissent in Tsutras would have granted more discretion to the trial court than the majority in determining the place for a medical examination. 685 So.2d at 982 (Goshom, J., dissenting).

. On our order to supplement the record on appeal, the parties have advised there was no court reporter at the calendar call.

.The order on review simply sets the date and time of the hearing to determine the petitioner's competency to testify. If the trial court orally announced the petitioner must attend the hearing, it was not reduced to writing, and therefore not enforceable. Absent a court order for the petitioner to appear, the only other vehicle for the respondent to compel the petitioner’s attendance at an evi-dentiary hearing is service of a subpoena.